BELLOWS FALLS MACHINE CO. *v.* MUNISING PAPER CO.

SALES—WARRANTIES—MACHINERY—FITNESS FOR PURPOSE.

> Machines furnished under a contract which specified that the design, material, and labor should be the best of the several kinds for their respective uses, and that the workmanship and material should be strictly first class for the purpose and in the place where used, and that the final payment was to be made thirty days after successful operation, are required to operate successfully for defendant's purpose known to the seller, before payment can be compelled in an action of assumpsit.

Error to Alger; Steere, J. Submitted October 13, 1909. (Docket No. 65.) Decided December 10, 1909.

Assumpsit by the Bellows Falls Machine Company against the Munising Paper Company, Limited, for goods sold and delivered. A judgment for defendant is reviewed by plaintiff on writ of error. Affirmed.

*Charles E. Ward*, for appellant.

*William P. Belden* and *Fred H. Berg*, for appellee.

MOORE, J. The plaintiff makes, at Bellows Falls, Vt., paper mill machinery. In June, 1904, and prior thereto, the defendant was building a large paper mill at Munising, Mich. It desired a double drum slitting and winding machine. The plaintiff had a voluminous correspondence with defendant, which resulted in the making of a written contract in June, 1904. The machines were furnished and put in place. They were partially paid for. The defendant claimed they did not meet the contract requirements, and could not successfully be operated, and declined to make the final payment for them. The plaintiff brought this suit to recover for the final payment. The defendant pleaded the general issue, and gave notice

of recoupment. The claims of the respective parties will appear more in detail later on. The jury returned a verdict in favor of defendant. The case is brought here by writ of error.

Those portions of the contract which are material here are as follows:

"The party of the first part hereby agrees to furnish all labor and material required for the complete delivery f. o. b. cars Bellows Falls, Vermont, of the machinery described in the accompanying specifications, which are hereby made a part of this agreement. * * *

"ARTICLE 2. The party of the second part hereby agrees to pay the said party of the first part for work and material as set forth in article 1, the sum of two thousand dollars. * * * Sixty-five *per centum* of the contract price on receipt of bill of lading. Balance, thirty days after successful operation of the machinery and acceptance by the architect, provided however, that the final payment shall be made not later than four months from the date of receipt of said bill of lading. * * *

"ARTICLE 4. This agreement shall supersede all previous agreements, if any, that may have been entered into between the parties hereto; such previous agreements, if any, being void, and of no effect. * * *

"GENERAL CONDITIONS. These specifications are for furnishing f. o. b. cars Bellows Falls, Vermont, the machinery hereinafter specified and described. The design, material and labor embodied in this contract, unless specified to contrary, are to be the best of the several kinds for their respective uses and subject to the approval of Joseph H. Wallace, New York City, hereinafter referred to as 'the architect,' and to his authorized representative. * * *

"GUARANTY. The contractor guarantees the workmanship and material to be strictly first class for the purpose and in the place where used. * * *

"CONSTRUCTION. The construction throughout is to be first class in workmanship and material, and the machine set up and tested in shop before shipment."

The plaintiff introduced in evidence a large quantity of correspondence leading up to the giving of the contract, and also gave oral testimony. An example is found in the testimony of Mr. Babbitt, the secretary, treasurer, and

manager of the company, as follows, on his direct examination:

"*Q.* What can you say, Mr. Babbitt, about the use and purpose that these machines were to serve being explained to you before you commenced making them for the defendant company?

"*A.* That I understood nothing further with reference to the use to which they were to be put than as appears from the correspondence, and from having read the accounts in one or two of the trade papers of the Munising Company's plant, and suppposing they would be put to the regular purpose of a double drum slitting and winding machine, as such machines are commonly and ordinarily used in the trade, or in the manufacture of paper."

On the cross-examination as follows:

"*Q.* You made the claim that you were entitled to collect the balance whether the machines would operate or not, did you not?

"*A.* I think I maintained the claim that, if the machines were in accordance with the contract, I was entitled to collect; the contract didn't provide for operation.

"*Q.* Is it your claim with reference to this contract that you are entitled to recover in this case entirely independent of the question of whether or not the machines can be successfully operated?

"*A.* No; not independent of whether they can be or not; if operated under proper conditions.

"*Q.* Then you would say that you were not entitled to the balance unless the machines could be successfully operated?

"*A.* I should say I would not unless they could be successfully operated under proper conditions."

The assignments of error all relate to the charge of the court, or its failure to charge as requested by counsel. We quote from the charge as follows:

"There are many things in the case which are undisputed, and which, of course, starting out in the consideration of the issues which are in controversy, you take as true and as the basis from which to explore and canvass the grounds of contention. It is undisputed that these two machines were ordered by the defendant from the

plaintiff after considerable correspondence and negotiations, and that finally a written contract was entered into, a contract which superseded all previous contracts, understandings, agreements, and negotiations which had been had. That contract was entered into on the 15th day of June, 1904. Following that, it is undisputed that these two machines were constructed by the Bellows Falls Machine Company, and were placed on board the cars there, shipped to, and received by, the Munising Paper Company at this place, and were received apparently in good condition. It is undisputed that the defendant set up those machines and tried to operate them, and that they did not operate successfully. It is undisputed that complaint was made to the plaintiff, and the plaintiff sent agents on to work upon the machines and endeavor to make them a success, and it is conceded that they were not run successfully in the defendant's mills. Following that, it is undisputed that the defendant, claiming the machines could not be made to work, boxed up the various parts, put them in condition for storage, and stored the two machines on its premises, notifying the plaintiff of that fact, and repudiating the contract, or, rather refusing to accept the machines they were furnished under the contract.

"The real issue, to state it concisely in the beginning of this charge, is whether or not these machines were of workmanship and material which were strictly first class for the purpose and the place where they were to be used. The question is whether the design and the material and the labor were the best of the several kinds for their respective uses. And the question in that connection is, Could they, as such, be successfully operated for the purposes for which they were constructed?

"Taking up the various requests which we have before us, you are instructed that it is the claim of the plaintiff that they were to furnish certain machinery to defendant, and were to receive in consideration a certain price therefor. The machinery was to be furnished, and the price paid, according to the terms of a written contract and specifications, which have been offered in evidence in this case. The plaintiff claims that the design, material, and labor used in the making of the machines were the best of the several kinds for their respective uses, and that the plaintiff furnished, at all times during the construction of this machinery, sufficient space and proper facilities for

inspection, not only of the design, materials, and labor embodied in the contract, but also, when that was actually done, in submitting the machines to the architect or to his authorized representative. It is also claimed by the plaintiff that the workmanship and material used in making these machines were strictly first class for the purpose, and in the place where they were to be used, and you are instructed that, if you find by a preponderance of evidence that those claims on the part of the plaintiff were true, and that the machines made by the plaintiff for the defendant were made according to the contract and specifications, and, before they were placed on board the cars at Bellows Falls, were put in plaintiff's shop and tested before shipment, and that after being tested they were placed on board the cars at Bellows Falls, and everything done by the plaintiff that it was required to do under the written terms of the contract and specifications, then the plaintiff has done all that it was required to do, and is entitled to a verdict for the balance that is due for the purchase price of the machinery. This involves, you observe, a requirement that they should have done everything that they were required to do under the written terms of the contract and specifications, and one of the things they were required to do was to construct a machine of the kind contracted for, which could be made to operate successfully.

"The duty of the plaintiff ended in regard to these machines when they were placed on board the cars at Bellows Falls, Vt. And if you are satisfied, from a preponderance of the evidence, that the plaintiff manufactured the machinery in accordance with the plans and specifications in every particular, and the machinery so manufactured was placed on board the cars at Bellows Falls in that condition, your verdict would be for the plaintiff. That, you understand, also involves the requirement that they should be manufactured so that they could be successfully operated if properly set up and properly operated. It was not the duty of the plaintiff to install this machinery in the defendant's plant at Munising, and it is claimed by the plaintiff that, after they had received word from the defendant that the machinery was not working satisfactorily, a representative of the plaintiff had been sent to Munising, and that they found that the machinery had been so erected in defendant's plant

that some of the bearings bound, and the machines did not run properly. And the plaintiff further claims that they also found that the application of the power to those machines, by which they were to be operated, had been changed from a less angle to a greater angle than had been provided for in the plans and specifications, and also that the belt used in driving this machinery was a rubber belt, and not a leather one, and that parts of the machine had been broken and pounded out of shape in the work of setting up and installing the same. And it is claimed by the plaintiff that if the machine did not properly work on account of any of these reasons, it was not the fault of plaintiff, and would be no defense to recovery by the plaintiff in this action. You have the claim of the plaintiff in that respect, gentlemen, and now, in that connection, this is also given to you:

" 'The plaintiff claims that the failure of the machine to operate was due in part to the use of a rubber belt by the defendant. The contract does not specify what kind of a belt should be used in these machines. The defendant was entitled to use any suitable belt, if desired, and if you find that the belt used was suitable for that purpose, and was such as is customarily used for such work, it is immaterial that the plaintiff's agent might personally have preferred some other kind of belt. That becomes a question of fact for you, to say whether or not the failure of the machines was due to the kind of belt used, in whole or in part.

" 'The plaintiff also claims that the failure of the machines to operate was due in part to the angle at which the belt used in driving the machine was placed. It appears that this belt was placed at a somewhat different angle than that as shown on data sheet No. 731, furnished by the architect. This question is material only in so far as you may find it affected the efficiency of the machinery. The defendant claims that this did not in any way affect the efficiency of the machinery, and if you find they are right in so claiming, then you have a right to disregard the criticism of the plaintiff in reference to the driving arrangement.'

"And so it becomes a question of fact for you to determine in this case whether or not the changing from the plans in that particular had any bearing upon the successful or unsuccessful operation of these machines. The machinery that was to be manufactured by the plaintiff for the defendant in this case was to be made and shipped according to the terms of a written contract and specification, and you are instructed, as a matter of law, that you

cannot go outside of the terms and provisions of this written contract in determining the responsibilities of the parties, either plaintiff or defendant, to this suit. It recited in article 4 of the contract that 'this agreement shall supersede all previous agreements, if any, that may have been entered into between the parties hereto; such previous agreements, if any, being void, and of no effect.' The plaintiff, in doing the work, in furnishing the material, workmanship, and design for making these machines, and, after they were manufactured, testing them in their shops, and afterwards placing them on board the cars at Bellows Falls, was expected to comply with the written terms and provisions in the contract and specifications, and if they have furnished the material, workmanship, and design in these machines, and have made them and placed them on board the cars, as the contract specifies, and you are satisfied of this by a preponderance of the evidence, your verdict will be for the plaintiff. It appears from the evidence in this case that, after the defendant had installed these machines in its manufacturing plant at Munising, the machines did not work satisfactorily to the defendant, and that the plaintiff was so advised, and sent to Munising several representatives to learn the cause of the trouble. It is the theory of the plaintiff that the defendant, when it attempted to assemble the different parts of the machine and erect and install the same in its plant at Munising, did not use the care and skill that was necessary in order to properly do the work, that the best kind of belt was not used, and that the application of the power by which these machines were to be worked was not as had been provided for in the plans and specifications, and that it was on account of these reasons, and not on account of any improper construction of the machinery, that they did not operate satisfactorily. It is also the theory of the plaintiff that, after the defendant had received these machines, and had installed them and started them in operation, they became convinced that it would be impracticable to take care of the large amount of paper in the manner they had planned for when they ordered the machines, and that, after having become so convinced of the impracticability of cutting and rewinding the paper of their manufacturing establishments as they had hoped they could do when they ordered these machines, they abandoned the machines, and sent word to the plaintiff that they could not make them work

satisfactorily. Of course, gentlemen, you will bear in mind that all responsibility for these machines and their custody and control passed from the plaintiff at the time they were delivered on board the cars at Bellows Falls, Vt.; that is, responsibility for their custody and control and putting them in operation, not responsibility as to anything that had occurred before. The responsibility still rested on the plaintiff to have furnished machines that could be operated successfully. * * *

"Defendant's Request 1.

"'The contract between the parties in this case provides that the design, labor, and material embodied in this contract are to be the best of the several kinds for their respective uses, and the plaintiff, by the terms of the contract, guaranteed the workmanship and material to be strictly first class for the purpose and in the place where used, but the contract itself does not specify what those uses were, nor in what places the machines were to be used. It is the claim of the defendant that at and before the time this contract was entered into, its officers and agents fully explained to the officers and agents of the plaintiff that it was constructing a large paper mill at Munising, which would contain two paper-making machines, each having a capacity of 25 tons for each day of 24 hours, and that these double drum rewinding and slitting machines were to be placed at the finishing end of said paper machines, respectively, and should be capable of slitting and rewinding the product of said machines into marketable rolls, varying in width from seven inches up to the full width of the drum. If you find this claim to be sustained by the evidence, then you are instructed that it became the duty of the plaintiff, under this contract, to build and furnish double drum winding and slitting machines of such design, construction, and material as should be suitable and fit for the purpose and the place for which it was understood the defendant was to use them. And if you further find that the plaintiff failed to build and furnish machines of such character, your verdict should be for the defendant.'

"Defendant's Request 2.

"'The specifications attached to the contract between the parties in this case are general in their character. They do not, except in a few instances, give the dimensions of any parts of the machines, and these specifications do not constitute a pattern by which a machine could be made. It was left to the plaintiff to prepare proper plans and working drawings from which machines of a suitable character for the uses to be made of them under this contract

should be made.   This is not a case where it can be said that the defendant ordered machines to be made according to a certain pattern prescribed by it.'

" As to this payment for which suit is brought, and which is a final payment, the contract provides that it should be payable within 30 days after successful operation of the machinery and acceptance by the architect, provided that final payment should not be later than four months from the receipt of the bill of lading.' This clause meant, giving some effect to each part of it, that the defendant was to make its tests within four months, and then, if the machines were successfully operated, and were accepted by the architect, to make the final payment. It is claimed by the defendant that these machines have not been, and cannot be, successfully operated; that they are not in accordance with the terms of the contract, and are practically worthless.   The defendant bases its claim upon the alleged worthlessness of the machine rather than upon the lack of a certificate of the architect.   And if you find that these machines have not been, and cannot be, successfully operated, though fairly tested by the defendant, then I instruct you that the plaintiff cannot recover.
\*   \*   \*

" So, gentlemen, you have these issues before you. Under the condition of the proofs and the pleadings in the case each of these parties is, in certain stages of the case, plaintiff and defendant.   The plaintiff, as we generally use the term, the Bellows Falls Machine Company, has brought the suit, and seeks to recover the balance due for this machinery.   The contract is in evidence, and the burden of proof is upon the Bellows Falls Machine Company to show that it has complied with the contract in the various particulars which I have explained.   The balance due upon this contract, if it was fulfilled, according to the undisputed evidence, computing interest from the time agreed upon, is the sum of $1,033.17.   It is conceded that if the plaintiff is entitled to recover at all, it is entitled to recover that amount.   The plaintiff in the matter of recoupment becomes a defendant, and defendant becomes a plaintiff.   There is an affirmative claim, set up by way of recoupment, by the Munising Paper Company, in which it seeks to recover back money already advanced in this connection, the payments amounting to $1,621.12, or 65 per cent. of the contract price, and for freight and labor and materials furnished to the Bellows Falls Machine

Company while it was endeavoring to make the machine operate successfully at this place. The total amount of that, with interest figured, is $2,127.98. In order to recover that amount the burden of proof is upon the defendant to show that that amount of money was expended in connection with this contract, and to establish its claim by a preponderance of evidence. You are the judges of the credibility of the witnesses, and it is for you to say what the facts in this case are in regard to these various matters in issue, and, as I said in the outset, the essential and important issue before you, boiled down, is whether or not these machines, when they were delivered on board the cars at Bellows Falls, Vt., were of workmanship and material strictly first class for the purpose and the place where they were to be used, whether or not the design, material, and labor were the best of the several kinds for the respective uses, and whether or not these machines could have been successfully operated in the place and for the purpose for which they were purchased."

The difficulties in the case grow out of the construction which shall be put upon the contract. We quote from the brief sufficient to show the contention of counsel:

."The contract contains an express guaranty and certain recitals as to what the machines will do, but does not guarantee or represent that it will do what defendant expected of it. It does expressly provide that all previous agreements are superseded and are void. * * * The contention of the defendant was that these words, 'for the purpose and in the place where used' related to the purpose of the machine when assembled and set up in the mill of the defendant and to the place of the machine as a whole, wherever it was to be actually used by the defendant. Clearly this is not the meaning of the terms. The clause refers to 'workmanship' and 'material' both in the same sentence, and the words 'purpose' and 'place' relate as much to one as to the other. There was to be no 'workmanship' used after the machines were constructed. The workmanship and material for the construction of these machines were to be furnished at Bellows Falls, Vt., while the machines were being constructed. The provision that the material should be first class in the place where used related to the question of its location in the machine itself. No doubt, it seems to me, can arise un-

der this language as to its meaning and application. It is plain and unambiguous. Neither of these terms have any reference whatever to the machine as a whole, when assembled in defendant's factory, nor to the purpose to be subserved by the machine when there, and surely not to the 'place' where it is to be used, in the sense of specifying the volume of work it was to be capable of doing. This will be still more plain if we consider what language would have been employed had it been the intention to guarantee the machine as a whole in the place where the machine was to be used, and to guarantee the specific volume and quality of the work to be done by it. It would have been as easy to express this intent as it was to express the intent that the workmanship and material were to be first class for the purpose and in the place where used in the construction of the machine."

Counsel then insist that the charge, from which we have already quoted, improperly presented this feature of the case to the jury.

In this connection it may not be inopportune to quote from a letter of plaintiff's:

"BELLOWS FALLS, VERMONT, Aug. 24, 1904.
"Messrs. MUNISING PAPER CO.,
"Mr. H. H. EVERARD, Supt.,
"Munising, Mich.

*"Gentlemen:* Referring to yours of the 18th inst., with reference to the two slitting and winding machines as per order of your company, on account of our desire to furnish your company with machines which should be a credit to us, and because we did not wish to use our regular patterns for these winders because of the lightness of the weight of the castings, which would be produced from them, we went to the expense of making new patterns for these winders, which are much heavier in construction. The delay incident to the making of such patterns has been longer than we had estimated, as a result of which we hardly think we shall be able to make shipment of the first winder inside of four or five weeks. We would also prefer, because of these particular winders being made from new patterns, if your company would be willing that we should do so, to make one winder complete and ship same to you for testing, after which, if it was found to be adequate in all respects, we could proceed promptly

with the second one.   We would esteem it a special favor
if you would consent to this arrangement, as we should
like to know that the first winder is adequate in all respects
before proceeding with the second one.   Will you please
advise if you will consent to this arrangement, and
oblige,
                    "Yours very truly,
            "BELLOWS FALLS MACHINE CO."

Counsel also contend as follows:

"It was the contention of the plaintiff that the contract
did not require it to set up the machines in defendant's
mill, and that successful operation there was not contracted
for as a condition precedent to the payment of the balance
due on the machines.   The defendant claimed the ma-
chines must be made to operate successfully according to
the alleged understanding of the parties outside the writ-
ten contract, and that until it did the plaintiff was not en-
titled to recover, but the defendant was entitled to recover
back the money already paid, with interest and expenses.
The court adopted the view of the defendant, and so in-
structed the jury.   In this I think he was in error.   Arti-
cle 1 of the contract recited that the first party 'agrees to
furnish all labor and material required for the complete
delivery f. o. b. cars Bellows Falls, Vt., of the machinery
described in the accompanying specifications, which are
made a part of this agreement.'   In article 2 the second
party agrees to pay first party, 'for work and material as
set forth in article 1.'   The specifications prepared by the
architect employed by the defendant prescribed the kind
of material and labor to be employed; required plaintiff to
provide sufficient, safe, and proper facilities at all times
for the inspection of the work by the architect; prescribed
the kind and size of machine, and specifically directed the
construction of the various parts of the machine, includ-
ing the frame, drums, slitter board, slitter shaft, spreader
board, shaft, gears, driving arrangement, painting, and
construction.   *   *   *   The plaintiff, therefore, built the
machines according to the direction of the defendant, and
could not be held responsible for their successful operation,
unless the clause in regard to payments made it so.   The
contract provides that payments are to be made on the
written certificate of the architect as follows:

"'Sixty-five *per centum* of the contract price on receipt of the
bill of lading, balance thirty days after successful operation of the

machinery and acceptance by the architect, provided, however, that the final payment shall be made not later than four months from the date of receipt of said bill of lading.'

"It was under this clause that the court adopted the view that defendant was entitled to recover its money back unless the machines had been successfully operated. I think this clause means that, if plaintiff, having performed its contract, shipped the machines, the defendant was to make the last payment in any event not later than four months from the date of the receipt of the bill of lading. This gives some effect to each part of the clause, as well as does the construction adopted by the court. The construction given this clause by the court practically made it obligatory upon the plaintiff to properly set up the machines under a contract which required it only to put them on board cars at Bellows Falls."

In making these various claims we think counsel overlooks some very important essentials. In the first place these machines were purchased to be used, and to be used in a certain place, and to accomplish certain results. The contract was made with these essentials all in view. The contract required, not only that the labor and material should be furnished, but that it should be furnished in such a way as to insure the complete delivery f. o. b. cars at Bellows Falls of completed machinery of the following character:

" The design, material and labor embodied in this contract, unless specified to the contrary, are to be the best of the several kinds for their respective uses and subject to the approval of Joseph H. Wallace, New York City, hereinafter referred to as 'the architect,' and to his authorized representative. * * *
" The contractor guarantees the workmanship and material to be strictly first class for the purpose and in the place where used."

Not only was the material and labor deemed important, but the design was deemed equally essential, and they were each to be of the best of the several kinds for their respective uses. No one contemplated the placing of machinery which would not accomplish results when used.

This was made very clear by an essential requirement of the contract before payment could be enforced, as is indicated by the following language in relation to payments: "Balance thirty days after successful operation of the machinery," etc. To hold that payment must be made for the machines even though they could not be successfully operated would be to defeat the very purpose of the contract.

The case was carefully tried, and we find no reversible error therein.

Judgment is affirmed.

BLAIR, C. J., and GRANT, McALVAY, and BROOKE, JJ., concurred.